UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

JANET CUSTALOW REID,

                                        Plaintiff,

        v.                                                      Action No. 3:13-CV-572

JEFFREY L. NEWTON, *et al.*,

                                        Defendants.

### **MEMORANDUM OPINION**

THIS MATTER is before the Court on six Motions to Dismiss filed by various Defendants. On August 19, 2011, Jason Paul Johnson ("Johnson") committed suicide while he was incarcerated at Riverside Regional Jail ("Jail"). His mother, Janet Custalow Reid ("Reid") filed a three-count Amended Complaint (ECF No. 1 Attach. 9) against nineteen (19) Defendants alleging gross negligence resulting in wrongful death under state law (Count One), violations of the Fifth and Fourteenth Amendments pursuant to 28 U.S.C. § 1983 (Count Two), and a claim for punitive damages (Count Three).

Before this action was removed to federal court on August 22, 2013, Defendant Jeffrey L. Newton ("Newton") filed a demurrer, which the parties have treated and briefed as a motion to dismiss ("Newton Motion"). Defendant Terrance Hicks ("Hicks") filed a Motion to Dismiss ("Hicks Motion") (ECF No. 11) on October 7, 2013. Defendant Ashley Williams ("Williams") filed a Motion to Dismiss ("Williams Motion") (ECF No. 14) on October 7, 2013. Defendant Leon Jordan ("Jordan") filed a Motion to Dismiss ("Jordan Motion") (ECF No. 19) on October 8, 2013. Also on October 8, 2013, Defendants Dankyi M. Ansong ("Ansong"), Andrea Canada ("Canada"), S. Creel ("Creel"), S. Deloatch ("Deloatch"), G. Grant ("Grant"), Andrea Humphrey ("Humphrey"), J. Lafland ("Lafland"), J. P. Miller ("Miller"), K. Moore ("Moore"), T. Rawlings

("Rawlings"), and Gerald Whitebread ("Whitebread") filed a Motion to Dismiss ("Ansong Motion") (ECF No. 21).[1] Finally, Defendants Derrick D. Day ("Day") and Jordan M. Jennings ("Jennings") filed a Motion to Dismiss ("Day Motion") (ECF No. 25) on October 9, 2013.[2] The two remaining Defendants did not join in any of these motions to dismiss, and default has been entered against one of them.

## I.    BACKGROUND[3]

A. FACTUAL AND PROCEDURAL BACKGROUND

Jason Paul Johnson was born in Chesterfield, Virginia in 1982 and, after graduating high school in 2000, worked as a machinist and welder for his family's business. Johnson had a history of mental illness and depression dating back to 1988, when his father passed away. Beginning around 2000, Johnson began abusing alcohol, but sought counseling for his alcoholism and psychiatric issues. By 2011, he was a recovering alcoholic.

On April 13, 2011, Johnson was convicted of a misdemeanor by a Chesterfield County court and received a six-month suspended sentence. He was subsequently arrested and placed into custody by order of July 19, 2011, pending a court date scheduled for September 27, 2011. Johnson was held without bail at the Chesterfield County Jail ("CCJ"). Upon admission to CCJ, Johnson disclosed his medical history, including the facts that he suffered from seizures and was a recovering alcoholic.

---

[1] The Ansong Motion is brought on behalf of defendants who had various roles at the Jail. Defendants Canada, Creel, Deloatch, Lafland, and Miller are alleged to have been involved in the intake process when Johnson first arrived at the Jail. Reid refers to them as being among the "Intake Defendants." In contrast, Defendants Ansong, Grant, Humphrey, and Whitebread are alleged to have been responsible for monitoring Johnson and are referred to by Reid as being among the "Supervision Defendants." Moore is alleged to have been a Watch Commander, and Rawlings is alleged to have been a Watch Commander Team Member.

[2] Defendants Day and Jennings are alleged to have been responsible for monitoring Johnson and are referred to by Reid as being among the "Supervision Defendants."

[3] For the purposes of this Memorandum Opinion, the Court assumes all of Reid's well-pleaded allegations to be true, and views all facts in the light most favorable to Reid. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).

On August 17, 2011, Johnson was charged with attempted escape and was ordered to appear in court the following day. Also on August 17, 2011, Johnson attempted to take his own life using a T-shirt, shoe laces, and a cord; however, CCJ employees intervened and prevented Johnson from harming himself. In response to Johnson's conduct, CCJ personnel documented Johnson's suicide attempt, performed psychiatric assessments, designated Johnson a "suicide risk" in CCJ's case management system, placed Johnson in "strip status," and instituted a "15-minute watch" regimen.[4]

On August 18, 2011, Defendant Robert Penepacker ("Penepacker"), a sergeant at the Chesterfield County Sheriff's Office, called Lafland, a Records Supervisor at the Jail, and informed him that Johnson would be transferred to the Jail that day. Penepacker admits in his Answer that he informed Lafland of Johnson's suicide attempt and that CCJ responded by "plac[ing Johnson] in a padded cell with a smock." (Penepacker Answer ¶ 30.) However, in the Answer filed by Lafland and nine other defendants, this allegation is neither admitted nor denied on the basis of insufficient knowledge. Reid asserts that Lafland failed to document, relay, or act on this information.[5] Additionally, CCJ personnel generated documents pertaining to Johnson ("Transfer Documents"), which were received at the Jail on or before August 18, 2011. The Transfer Documents noted Johnson's "suicide risk" designation and include descriptions of Johnson's suicide attempt, psychiatric assessments, and the precautionary measures taken by CCJ.

Also on August 18, 2011, Johnson appeared in court and was transferred to the Jail, where he was to be held until trial on October 12, 2011. After Johnson arrived at the Jail, he was subjected to various procedures, including personal item inventory, review of medical and

---

[4] "Strip status" required CCJ personnel to confiscate any means by which Johnson could harm himself. Institution of a "15-minute watch" regimen meant that Johnson was more closely, and more frequently, monitored than other inmates.

[5] Reid's assertion in this regard is based on the lack of any such documentation in the records she subpoenaed from the Jail.

behavioral history, and interview ("Intake Procedures"). The Intake Procedures continued into the early-morning hours of August 19, 2011. One or more Defendants completed intake paperwork that noted Johnson's suicide attempt, and a psychiatric referral was initiated by Canada.

Despite documentation regarding Johnson's suicide attempt and specific instructions in the Transfer Documents, Johnson was assigned to a holding cell in "Pod A" rather than a cell designated for inmates who present a risk of self-harm. Pod A is a general population holding area where heightened monitoring, "strip status" confinement, and other precautionary measures are not taken. Johnson was not assigned a cellmate. Although a psychiatric referral was initiated, Defendants failed to take any precautionary measures to protect Johnson from harming himself or to monitor Johnson more frequently than other inmates. Defendants also failed to apply the Jail's suicide-prevention policies to Johnson.

On August 19, 2011, Johnson fashioned his bed sheets into a noose and hung himself from the ladder of a bunk bed in his cell. His body was discovered at approximately 10:25 a.m. Reid asserts that at the time of his death and for some time prior, Johnson was not of sound mind.

Reid originally brought suit against Riverside Regional Jail Authority ("RRJA"), but her complaint was dismissed on the grounds of sovereign immunity. She then filed suit against Newton in the Circuit Court of Chesterfield County ("Chesterfield Court"), which denied a demurrer filed by Newton. Subsequently, Reid filed the Amended Complaint, adding claims and eighteen additional defendants. Newton filed a demurrer, but the Chesterfield Court Judge recused himself prior to ruling on the demurrer, and Newton removed the action to this Court.

B. ALLEGATIONS AGAINST SPECIFICALLY IDENTIFIED DEFENDANTS

Each of the six motions to dismiss asserts, among other things, that dismissal is proper because Reid has failed to assert sufficient facts to plausibly allege a claim against any individual Defendant. Additionally, several of the motions to dismiss are made by groups of Defendants

against whom different facts are alleged. A summary of the factual allegations, organized by the Defendant or Defendants against whom they are made, follows:

- Newton, superintendent of the Jail, "was responsible for establishing minimum performance standards and management practices to govern the Jail Defendants, had the primary responsibility for applying the Board of Corrections standards to the Jail, and is accountable for the acts and omissions of the other Jail Defendants." (Am. Compl. ¶ 44.)

- Penepacker called Lafland to inform him of Johnson's impending transfer to the Jail.

- Canada, Creel, Deloatch, Hicks, Lafland, Miller and Williams (collectively, "Intake Defendants") "were responsible for or otherwise involved in conducting, overseeing, or making decisions based on information obtained or available during the Intake Procedures." (Am. Compl. ¶ 34.)

- Canada, a Correctional Health Assistant, initiated a psychiatric referral and noted that Johnson "tried to commit suicide per Chesterfield Jail. Tried to tie a noose (shirt) around neck." (Am. Compl. ¶ 35.)

- Ansong, Day, Grant, Humphrey, Jennings, Taylor, and Whitebread (collectively, "Supervision Defendants") are alleged to have been "responsible for supervising or monitoring Mr. Johnson and other inmates at the Jail." (Am. Compl. ¶ 6.) Reid alleges that the Supervision Defendants failed to take precautionary steps against Johnson's known risk of self-harm.

There are no specific factual allegations as to Defendants Jordan, Moore, or Rawlings, beyond an allegation that they each were employed at the Jail in a particular capacity.[6]

//

//

---

[6] The Amended Complaint makes various general allegations against "Jail Defendants," which it defines as including each Defendant employed by the Jail. To the extent that these general allegations bear on the Court's disposition of the pending motions, they will be described and addressed separately.

## II.    LEGAL STANDARD

Rule 12 of the Federal Rules of Civil Procedure allows a defendant to raise a number of defenses to a complaint at the pleading stage, including failure to state a claim. A motion to dismiss for failure to state a claim upon which relief can be granted challenges the legal sufficiency of a claim, rather than the facts supporting it. Fed. R. Civ. P. 12(b)(6); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007); *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A court ruling on a Rule 12(b)(6) motion must accept all of the factual allegations in the complaint as true, *see Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254-55 (W.D. Va. 2001), in addition to any provable facts consistent with those allegations, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and must view these facts in the light most favorable to the plaintiff, *Christopher v. Harbury*, 536 U.S. 403, 406 (2002).

To survive a motion to dismiss, a complaint must contain factual allegations sufficient to provide the defendant with "notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8(a)(2) requires the complaint to allege facts showing that the plaintiff's claim is plausible, and these "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 & n.3. The Court need not accept legal conclusions that are presented as factual allegations, *id.* at 555, or "unwarranted inferences, unreasonable conclusions, or arguments," *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996). Qualified immunity is such an affirmative defense because, if applicable, qualified

immunity includes "an entitlement not to stand trial or face the other burdens of litigation." *Behrens v. Pelletier*, 516 U.S. 299, 306 (1996) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)); *see Jenkins v. Medford*, 119 F.3d 1156, 1159 (4th Cir. 1997) (en banc).

## III.    DISCUSSION

Reid's Amended Complaint categorizes Defendants by their job duties and makes allegations against particular Defendants on the basis of those categories. For the purposes of assessing the sufficiency of the Amended Complaint's factual allegations, the Court will similarly categorize Defendants and separately consider legal arguments raised by individual Defendants.

### A.  CLAIMS AGAINST NEWTON

Reid alleges that Newton may be held liable under section 1983 for his deliberate indifference, and both personally and vicariously liable for causing Johnson's death by his own gross negligence and that of his subordinates. With regard to the section 1983 claim, she asserts that Newton may be held liable whether he had actual knowledge or constructive knowledge of Johnson's suicide risk. With regard to the gross negligence claim, Reid argues that Newton's position as Superintendent of the Jail is analogous to that of a sheriff, making recovery on a claim of vicarious liability appropriate. For the reasons that follow, the Newton Motion will be granted.

#### 1.  *Section 1983 Claim*

The Fourteenth Amendment protects individuals against egregious or arbitrary conduct by government officials and entitles pretrial detainees to at least the same protections as is afforded to convicted prisoners under the Eighth Amendment. *Young v. City of Mt. Rainer*, 238 F.3d 567 (4th Cir. 2001) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239 (1983); *Hill v. Nicodemus*, 979 F.2d 987, 991-92 (4th Cir. 1992)). Both convicted prisoners and pretrial detainees have a clearly established right to "medical attention, and prison officials violate detainees' rights to due process when they are deliberately indifferent to serious medical needs."

*Gordon v. Kidd*, 971 F.2d 1087, 1094 (4th Cir. 1992) (citing *Loe v. Armistead,* 582 F.2d 1291, 1294 (4th Cir. 1978)).

"[D]eliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). To successfully allege a claim of deliberate indifference to a serious medical need, a plaintiff must satisfy a two-pronged test consisting of an objective element and a subjective element. *See Farmer*, 511 U.S. at 834, 837. First, the plaintiff must allege that the pretrial detainee had an "objectively, sufficiently serious" medical condition. *Id.* at 834. Second, she must allege that the prison official actually knew of and disregarded an excessive risk of harm related to the detainee's serious medical condition. *Id.* at 837 (rejecting the invitation to adopt an objective test for deliberate indifference). "Actual knowledge or awareness on the part of the [prison official] is essential to proof of deliberate indifference." *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995).

Reid argues unpersuasively that constructive knowledge of a serious medical condition is sufficient to demonstrate deliberate indifference. She asserts that *Farmer* is not controlling on this Court because it decided an Eighth Amendment claim rather than a Fourteenth Amendment claim. However, the Supreme Court has implied that the standard for deliberate indifference under the Eighth Amendment applies to claims brought under the Fourteenth Amendment. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998) ("Since it may suffice for Eighth Amendment liability that prison officials were deliberately indifferent to the medical needs of their prisoners, it follows that such deliberately indifferent conduct must also be enough to satisfy the fault requirement for due process claims based on the medical needs of someone jailed while awaiting trial." (internal citations omitted)). Although the Fourteenth Amendment prohibits punishment without due process of law, a prison official's conduct does

not constitute "the infliction of punishment" when it is "unaccompanied by *knowledge of a significant risk of harm*" to the pretrial detainee. *Farmer*, 511 U.S. at 837-38.

The Fourth Circuit has confirmed the correlation between the Eighth Amendment deliberate indifference standard and Fourteenth Amendment deliberate indifference claims, such as those presented by Reid. *See Brown v. Harris*, 240 F.3d 383, (4th Cir. 2001); *Hoy v. Simpson*, No. 97-1583, 1999 U.S. App. LEXIS 14026, at *9-13 (4th Cir. 1999). The *Hoy* Court found no error in the district court's use of an instruction essentially quoting the *Farmer* subjective knowledge requirement in a Fourteenth Amendment deliberate indifference case.[7] Similarly, the *Brown* Court declined to determine whether a decedent was a prisoner or a pretrial detainee because—whether brought under the Eighth or the Fourteenth Amendment— "the [deliberate indifference] standard in either case is the same." *Brown*, 240 F.3d at 388; *see also Parrish v. Cleveland*, 372 F.3d 294, 302 n.11 (4th Cir. 2004) ("This [Fourteenth Amendment deliberate indifference] standard is the same as that which applies in cases arising under the Eighth Amendment."). Further, Reid has cited to no controlling authority decided more recently than *Farmer* that suggests constructive knowledge of a serious medical condition is sufficient to impose liability under section 1983. As such, the Court reiterates that a well-pleaded claim of deliberate indifference in violation of the Fourteenth Amendment must plausibly allege that the defendant had actual knowledge of a pretrial detainee's serious medical condition. *Accord Chennault v. Mitchell*, 923 F. Supp. 2d 765, 779 (E.D. Va. 2012), *adopted by* 923 F. Supp. 2d 765 (E.D. Va. 2013).

---

[7] *Hoy* does not support the conclusion, as Reid suggests, that constructive knowledge is sufficient to impose liability for deliberate indifference brought under the Fourteenth Amendment. The *Hoy* Court noted the district court's use of one instruction that invoked an objective standard, rather than a subjective standard. 1999 U.S. App. LEXIS 14026, at *12. However, the Fourth Circuit characterized this instruction as merely ensuring that jury would "consider all of the facts and circumstances, including the obviousness of the risk" in determining "the defendant's subjective awareness" of that risk. *Id.* at *12-14. This characterization is consistent with the Supreme Court's reminder that subjective knowledge is a fact "subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842. It does not indicate that liability for deliberate indifference may be imposed when a prison official lacks actual knowledge of a pretrial detainee's serious medical condition.

Whether a complaint makes plausible allegations is a "context-specific task in which the factual allegations of the complaint must be examined to assess whether they are sufficient to raise a right to relief above the speculative level." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Twombly*, 550 U.S. at 555)) (internal quotation marks and citations omitted). While a complaint need not forecast evidence or prove the elements of a claim, it must "allege sufficient facts to establish those elements." *Id.* (quoting *Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 288, (4th Cir. 2012)). A complaint deficient in this regard will not "unlock the doors of discovery" and is properly dismissed pursuant to a Rule 12(b)(6) motion. *Iqbal*, 556 U.S. at 678.

Reid's Amended Complaint is devoid of any fact tending to support her naked assertion that Newton had actual knowledge of Johnson's suicide attempt. Although Newton is categorized as a "Jail Defendant" and the Jail Defendants are generally charged with "actual or constructive knowledge" of the Transfer Documents, this allegation lacks any factual support. (Am. Compl. ¶ 31.) The only supporting facts related to specifically to Newton in the Amended Complaint assert that he was employed as the Superintendent, and was charged with certain responsibilities. The Court cannot reasonably infer from these facts that Newton had personal knowledge of the Transfer Documents or of Johnson's suicide attempt. Reid asserts that Newton's role and responsibilities at the Jail support such an inference; however, Newton is not alleged to have been present at the Jail during or after Johnson's transfer,[8] to have been involved in any capacity in the Intake Procedures, or to have communicated with any other Defendant. Although Reid need not make her case against Newton in the Amended Complaint, *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 349 (4th Cir. 2005), Newton's job title alone is insufficient to raise the allegation of actual knowledge above the speculative level, *see Walters*, 684 F.3d at 441-42 (affirming dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6)

---

[8] Johnson may have been present at the Jail for less than twenty-four hours before he took his own life. (*See* Am. Compl. ¶¶ 32, 33, 41.)

because the amended complaint "provide[d] no factual basis to support the statement that [defendants] had 'actual knowledge'").[9] Because actual knowledge of a serious medical condition is a required element of a deliberate indifference claim, this deficiency is fatal to Reid's section 1983 claim against Newton.

### 2.  *Wrongful Death Claim and Punitive Damages Claims*

Virginia's wrongful death statute provides a procedural vehicle for a third party to assert a claim that would have belonged to the decedent, had he survived. *See* Va. Code § 8.01-50. Reid asserts that Newton's personal failure to take any action regarding Johnson's risk of self-harm constitutes gross negligence under Virginia law. She also asserts that Newton may be held vicariously liable for the gross negligence of his subordinates. The wrongful death claim, therefore, is premised on an allegation of gross negligence. However, the Amended Complaint fails to state a claim against Newton for personal or vicarious liability. Accordingly, the claim for wrongful death fails as a matter of law.

### a.  Primary Liability[10]

Reid has alleged that Newton's personal conduct constitutes gross negligence. To the extent Newton's conduct constituted only simple negligence, he may be entitled to sovereign immunity. *See Colby v. Boyden*, 400 S.E.2d 184, 186 (Va. 1991) (citing *James* v. *Jane*, 282

---

[9] Although the requirement for nonconclusory factual detail may sometimes be tempered at the pleading stage, *Robertson*, 679 F.3d 278, 291 (4th Cir. 2012), Reid has already had the benefit of substantially more discovery than most litigants facing a 12(b)(6) motion.

[10] Reid urges the Court to deny the Newton Motion to the extent that it seeks dismissal of the wrongful death claim because the Chesterfield Court previously denied a demurrer to a parallel claim in Reid's original complaint. While state court orders are given "full force and effect until dissolved or modified by the district court," an Amended Complaint was filed subsequent to the Chesterfield Court's ruling. 28 U.S.C. § 1450. The Chesterfield Court's order could conceivably be considered the "law of the case"; however, the law of the case is "a matter of proper judicial administration which can vary with the circumstances" and which may not be considered binding precedent in the district court's discretion. *Hill v. BASF Wyandotte Corp.*, 696 F.2d 287, 290 n.3 (4th Cir. 1982); *accord Holmes v. AC&S, Inc.*, 388 F. Supp. 2d 663, 668 (E.D. Va. 2004) (citing *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 436, 39 L. Ed. 2d 435, 94 S. Ct. 1113 (1974)). In this case, the Court will independently consider the grounds raised by the Newton Motion because an Amended Complaint was filed subsequent to the Chesterfield Court's order and because the record does not disclose the reasoning adopted by the Chesterfield Court in overruling the demurrer.

S.E.2d 864, 869 (Va. 1980); *Sayers* v. *Bullar*, 22 S.E.2d 9, 12 (Va. 1942)). Whether conduct constitutes simple or gross negligence is generally a question of fact for resolution by the jury; it becomes a question of law only when reasonable people could not disagree on the outcome. *Griffin v. Shively*, 315 S.E.2d 210, 212 (Va. 1984). Nevertheless, the complaint must still state a claim for gross negligence, and the Supreme Court of Virginia has taken this issue from the jury regularly. *See, e.g.*, *City of Lynchburg v. Brown*, 613 S.E.2d 407 (Va. 2005); *Frazier v. City of Norfolk*, 362 S.E.2d 688, 691 (Va. 1987); *Griffin*, 315 S.E.2d at 212; *Cmty. Bus Co. v. Windley*, 299 S.E.2d 367, 368-69 (Va. 1983).

In Virginia, gross negligence is defined as "that degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another. It is a heedless and palpable violation of legal duty respecting the rights of others." *City of Lynchburg*, 613 S.E.2d at 410 (quoting *Frazier*, 362 S.E.2d at 691). To state a claim for gross negligence, a plaintiff must plead the regular elements of a negligence claim, plausibly alleging that the defendant's conduct constitutes "want of even scant care and amounts to the absence of slight diligence." *Id*. The familiar elements of a viable negligence claim include a legal duty imposed on the defendant, the defendant's breach of that duty, and consequent damage. *Fox v. Custis*, 372 S.E.2d 373, 375 (Va. 1988). In determining whether a defendant's breach constitutes gross negligence, the Supreme Court of Virginia has held that "[d]eliberate conduct is important evidence on the question of gross negligence." *Chapman v. City of Va. Beach*, 475 S.E.2d 798, 801 (1996). Accordingly, a claim of gross negligence fails as a matter of law where there is no deliberate conduct by the defendant. *See City of Lynchburg*, 613 S.E.2d at 410-11.

The *City of Lynchburg* Court distinguished between two earlier Supreme Court of Virginia cases: *Frazier*, 362 S.E.2d 688, and *Chapman*, 475 S.E.2d 798. The Court noted that *Chapman* presented a jury question on the issue of gross negligence because the defendant had actual knowledge of a hazard and deliberately chose not to address that hazard; *Frazier*, on the other hand, did not raise a triable claim of gross negligence because the defendant's failure to

observe an open and obvious hazard was not a "heedless, palpable violation of rights," even where the defendant had actual knowledge of a prior injury resulting from the same hazard. *City of Lynchburg*, 613 S.E.2d at 409-10. In finding that the plaintiff's claim for gross negligence failed as a matter of law, the *City of Lynchburg* Court held that a plausible allegation of constructive knowledge "is insufficient, standing alone, to present a jury issue on gross negligence." *Id.* at 410 ("[A] jury could have found that the City should have known of the hazardous bleacher. But, under these facts, that is insufficient . . . ."). In light of these precedents, to plausibly allege a claim for gross negligence under Virginia law, the complaint must allege deliberate conduct by the defendants. In the case of a failure to act, deliberate conduct necessarily implies actual knowledge of facts that create a choice to act or to abstain.

For the reasons already stated, the Amended Complaint lacks sufficient facts to plausibly allege that Newton had actual knowledge of Johnson's presence at the Jail or Johnson's propensity for self-harm. Without such actual knowledge, Newton could not have deliberately disregarded any duties he may have owed to Johnson. The Amended Complaint, therefore, does not plausibly allege that Newton engaged in any deliberate conduct with respect to Johnson. Because Reid has not plausibly alleged deliberate conduct by Newton, her claim for gross negligence fails as a matter of law.[11]

//

---

[11] To be clear, the Court acknowledges that a claim for gross negligence under Virginia law likely requires a lesser showing of recklessness than a claim for deliberate indifference under the Fourteenth Amendment. *See Farmer*, 511 U.S. at 837 (adopting a subjective standard for deliberate indifference equivalent to that for criminal recklessness); *Boward* v. *Leftwich*, 89 S.E.2d 32, 35 (Va. 1955) ("[A]ctual or constructive consciousness of the danger involved is an essential ingredient of [willful and wanton negligence]."); *id.* ("Willful and wanton negligence is greater in degree than gross negligence."); *see also Estate of Rodriguez v. Simon*, No. 2:06-cv-125, 2007 U.S. Dist. LEXIS 55982, at *16-18 (D. Vt. Mar. 30, 2007). However, the Amended Complaint fails to plausibly allege that Newton recklessly disregarded Johnson's suicide risk knowing "that his conduct probably would cause injury to [Johnson]," *Woods v. Mendez*, 574 S.E.2d 263, 268 (Va. 2003) (defining willful and wanton negligence), and also fails to plausibly allege that Newton deliberately chose not to take any action with regard to Johnson, *see City of Lynchburg*, 613 S.E.2d at 410.

a. <u>Vicarious Liability</u>[12]

Reid asserts that Newton may be held vicariously liable for the grossly negligent conduct of the Supervision Defendants and the Intake Defendants, because they were his subordinates at the Jail; however, "[p]ublic officers are generally not vicariously liable for the actions of a subordinate unless the public officer appointed that subordinate." *Rasi v. Dep't of Corr.,* No. 7:08-cv-203, 2009 U.S. Dist. LEXIS 2540, at *32 (W.D. Va. Jan. 14, 2009) (citing *First Virginia Bank–Colonial v. Baker,* 301 S.E.2d 8, 13 n.4 (Va. 1983)). Because the record does not indicate that Newton, personally, was vested with the authority to appoint deputies, he may not be held vicariously liable for his subordinates' conduct.

In resolving its precedents applying *respondeat superior* liability to public officials, the Supreme Court of Virginia has noted a need to balance the "interests of the public in the faithful performance of official duties" against a concern that public service would be discouraged by "subjecting public officers to a responsibility for subordinates, whom [public officers] must employ, and who are seldom under their immediate control." *First Virginia Bank–Colonial,* 301 S.E.2d at 12. The balance struck directs that "a constitutional officer elected by the people" may not rely on a *per se* exemption from vicarious liability. *Id.* In applying this holding, the Supreme Court of Virginia found that a clerk of court could be liable under a theory of *respondeat superior* because she was an elected constitutional officer and was vested with the authority to appoint deputies. *Id.* at 13 n.4 ("[A] public officer who appoints a deputy (*as distinguished from a mere assistant or subordinate*) is generally responsible for the latter's official acts, because the act of the deputy, by color of the principal's authority, is that of the

---

[12] To the extent that Reid asserts Newton may be held liable for negligently supervising the conduct of his subordinates, (*see* Am. Compl. 44.), the Court notes that such a cause of action is distinct from a theory of *respondeat superior* because it asserts primary, rather than vicarious liability. Under Virginia law, there is "no duty of reasonable care imposed upon an employer in the supervision of its employees under these circumstances." *Spencer v. General Elec. Co.*, 894 F.2d 651, 657 (4th Cir. 1990) (quoting *Chesapeake & Potomac Tel. Co. of Va. v. Dowdy*, 365 S.E.2d 751 (1988)) (finding a claim that "[an employer's] negligence in failing to prevent [a third party] from intentionally harassing [the plaintiff]" was analogous to *Dowdy* and failed as a matter of law), *overruled on other grounds by Farrar v. Hobby*, 506 U.S. 103, (1992)).

principal himself." (emphasis added) (quoting 71 A.L.R.2d 1140, 1143, annot. (1960))). Consistent with this reasoning, the Supreme Court of Virginia recently held that the Commonwealth could not be held vicariously liable for the torts of sheriff's deputies. *Doud v. Commonwealth*, 717 S.E.2d 317, 321-22 (Va. 2011). The *Doud* Court implied that the sheriff—an elected constitutional officer vested with the authority to appoint deputies—was responsible for the torts of his deputies because they acted under the color of his authority, rather than as employees of the Commonwealth. *See id.*

In light of these precedents, the Court finds that Newton cannot be held liable under the doctrine of *respondeat superior* because he merely supervised subordinates, rather than appointed or employed deputies. *See First Virginia Bank–Colonial,* 301 S.E.2d at 13 n.4. Reid has cited to no cases holding a superintendent of a Virginia regional jail vicariously liable for the torts of jail officers. Although Reid argues that Newton's position as superintendent is indistinguishable from that of a sheriff, the Virginia Code vests the Jail—rather than its superintendent—with the power "[t]o appoint, select, and employ officers, agents, and employees." Va. Code § 53.1–95.7(3).[13] While the Virginia Code vests the superintendent with powers and authorities similar to those of a sheriff, it does not impose on the superintendent the same liabilities of a sheriff. *See* Va. Code § 53.1–95.8. Further, while sheriff's deputies generally derive their authority from the sheriff, the Virginia code vests jail officers with authority independent from that of the superintendent. *Compare id.*, *with* Va. Code § 15.2-1603 (vesting the sheriff and other constitutional officers with the power to "appoint one or more deputies, who may discharge any of the official duties of their principal during his continuance in office"). Because Newton is not an elected constitutional officer vested with the authority to appoint deputies, he is not subject to liability under a theory of *respondeat superior*.[14]

---

[13] The same statute vests also the Jail with the authority to appoint a superintendent. Va. Code § 53.1–95.7(3).

[14] In reaching this conclusion, the Court appreciates the harsh result that flows from this reasoning; that is, because the Jail is protected by sovereign immunity, Reid may be precluded from successfully raising any claim of

Because both the section 1983 claim and the wrongful death claim fail as a matter of law, Reid cannot be awarded punitive damages. Accordingly, the Newton Motion will be granted. However, Reid has informally requested leave to amend her pleadings in the event that the Court finds them insufficient. Under Rule 15(a)(2), a party may amend its pleading with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). The rule suggests that courts "should freely give leave when justice so requires." *Id.* This broad rule gives effect to the "federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey,* 438 F.3d 404, 426 (4th Cir. 2006) (en banc) (citing *Conley v. Gibson,* 355 U.S. 41, 48 (1957)). The Fourth Circuit has interpreted Rule 15(a) to mean that "leave to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber,* 438 F.3d at 426 (citing *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 509 (4th Cir. 1986)). However, Reid has not formally moved for leave to amend and has not provided any proposed amendment to her pleadings relating to Newton. Because the Court cannot determine whether an undisclosed amendment would meet the requirements of Rule 15, leave to amend will not be granted, but the Amended Complaint will be dismissed without prejudice as to Newton.

B. CLAIMS AGAINST SUPERVISION DEFENDANTS

As explained in the preceding Part III.A., actual knowledge of Johnson's propensity for self-harm must be plausibly alleged to state a claim for deliberate indifference under section 1983 and for gross negligence under Virginia law. As with the allegations against Newton, the Amended Complaint fails to plausibly allege that the Supervision Defendants had such actual knowledge. Notice of Johnson's suicide risk was allegedly transmitted to the Jail in two ways:

---

vicarious liability. However, absent a clear mandate from the Virginia Legislature, the Supreme Court of Virginia, or the Fourth Circuit, the Court declines to extend the doctrine of *respondeat superior* beyond its previously recognized reach. *Accord Boren v. Nw. Reg'l Jail Auth.,* No. , 2013 U.S. Dist. LEXIS 140169, at *22 (W.D. Va. 2013) (finding that a Virginia regional jail superintendent cannot be liable under the doctrine of *respondeat superior* because the jail, rather than the superintendent, employed the negligent jail officers).

Penepacker allegedly called Lafland at the Jail and personally gave him notice, and the Transfer Documents were allegedly received at the Jail on August 18, 2011. The Transfer Documents were allegedly used by the Intake Defendants during their performance of the Intake Procedures. The Court accepts these factual allegations as true, but need not accept as true any legal conclusions or unsupported inferences the Amended Complaint draws from these facts. *Iqbal*, 556 U.S. at 678.

The conclusion that all Jail Defendants "received or had actual or constructive knowledge of certain transfer documents" is an unsupported legal conclusion. (Am. Compl. ¶ 31.) The Amended Complaint lacks any factual enhancement tending to support the conclusion that the Supervision Defendants had access to, or knowledge of, the Transfer Documents. While the Supervision Defendants were allegedly responsible for monitoring Johnson, there is no allegation that the Supervision Defendants were involved in the Intake Procedures, communicated with the Intake Defendants, or had an alternative means to obtain notice of Johnson's suicide risk. Neither the fact that the Transfer Documents were at the Jail contemporaneously with the Supervision Defendants, nor the fact that the Intake Defendants used the Transfer Documents creates a reasonable inference—standing alone—that the Supervision Defendants had actual knowledge of Johnson's suicide risk. Because the Amended Complaint fails to plausibly allege that the Supervision Defendants had actual knowledge of Johnson's propensity for self-harm, it has not "raise[d] a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Because both the section 1983 claim and the wrongful death claim fail as a matter of law as to the Supervision Defendants, Reid cannot be awarded punitive damages for the Supervision Defendants' conduct. Accordingly, the Day Motion will be granted in its entirety, and the Ansong Motion will be granted as to Supervision Defendants Ansong, Grant,

Humphrey, and Whitebread, as well as Defendants Moore and Rawlings.[15] For the reasons given in preceding Part III.A.2.b., the Amended Complaint will be dismissed without prejudice as to the Supervision Defendants.

### C. CLAIMS AGAINST INTAKE DEFENDANTS

Reid's allegations against the Intake Defendants do not suffer from the same defect as those against Newton and the Supervision Defendants; namely, the Amended Complaint has plausibly alleged that the Intake Defendants had actual knowledge of Johnson's propensity for self-harm, as documented in the Transfer Documents. This allegation is supported by the facts that the Transfer Documents detailed Johnson's first suicide attempt, were received by the Jail, and were used by the Intake Defendants during the Intake Procedures.

Nevertheless, the Intake Defendants argue that dismissal is proper for a number of reasons. Collectively, the Intake Defendants argue: (1) that they are entitled to qualified immunity, making dismissal of the deliberate indifference claim appropriate, and (2) that the gross negligence claim fails for a number of reasons. Additionally, Intake Defendants Williams, Canada, and Jordan make arguments that apply only to them. The Court finds that none of these arguments are persuasive for the reasons that follow.

#### 1. *Section 1983 Claim and Entitlement to Qualified Immunity*

The defense of qualified immunity "is meant to give government officials a right, not merely to avoid standing trial, but also to avoid the burdens of such *pretrial* matters as discovery." *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996) (internal quotation marks omitted) (quoting *Mitchell* v. *Forsyth*, 472 U.S. 511, 526 (1985)). As such, government officials who are sued in their individual capacities may invoke the defense in a motion to dismiss, and the court

---

[15] Defendants Moore and Rawlings are not defined as "Supervision Defendants" by the Amended Complaint, but were employed by the Jail as a Watch Commander and Watch Commander Team Member, respectively. (Am. Compl. ¶¶ 6, 14, 16.) The Amended Complaint fails to make any allegation concerning Moore and Rawlings beyond the general allegations made against all Defendants employed by the Jail. Even assuming, without deciding, that Defendants Moore and Rawlings should have been categorized as Supervision Defendants, the Amended Complaint fails to state any claim as to these individuals, and they will be dismissed from this action.

must determine whether the facts alleged in the complaint establish that the defendants' conduct was objectively legally reasonable. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982).

To grant a defendant qualified immunity, a court must find that the defendant's conduct did not violate a clearly established statutory or constitutional right of which a reasonable person would have known. *See Edwards*, 178 F.3d at 250. Courts must identify the constitutional right at issue with "a high level of particularity," but may rest their determination either on a finding that no constitutional right was violated or on a finding that the constitutional right was not clearly established at the time of the alleged misconduct. *Id.* at 251; *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009). A defendant invoking qualified immunity bears the burden to demonstrate its applicability. *Durham v. Jones*, 737 F.3d 291, 299 (4th Cir. 2013).

The Intake Defendants have not demonstrated an entitlement to qualified immunity. Their assertion of qualified immunity is based solely on the assumption that the Amended Complaint fails to plausibly allege they had actual knowledge of Johnson's propensity for self-harm.[16] As previously explained, the Amended Complaint sufficiently alleges actual knowledge on the part of the Intake Defendants. For this reason alone, the Intake Defendants have failed to meet their burden to demonstrate an entitlement to qualified immunity.

   2.   *Wrongful Death and Punitive Damages Claims*

The Intake Defendants argue that Reid's state law claims are time barred, precluded by the illegality of Johnson's suicide, and insufficient to state a claim for gross negligence and punitive damages. Each of these arguments fails for the reasons that follow.

//

//

---

[16] To the extent that Williams provides additional argument in support of her entitlement to qualified immunity, her argument is addressed in Part III.C.3, *infra*.

a.   Statute of Limitations

The Intake Defendants argue that Reid's wrongful death claim and punitive damages claim are barred by the statute of limitations codified in Virginia Code § 8.01-243.2, which imposes a one-year statute of limitations to action brought by or on behalf of a person who was confined at the time the action accrued. *See Bing v. Hollywood*, 722 S.E.2d 244, 245-47 (Va. 2012). The Intake Defendants assert that Reid had only one year from the time of Johnson's death to file her claim because his injury resulted from a lack of medical care and medical care was a "condition[] of his confinement." Va. Code § 8.01-243.2; *Patten v. Nichols*, 274 F.3d 829, 838 (4th Cir. 2001). Reid asserts that the two year statute of limitations applicable to wrongful death claims governs this action. *See* Va. Code §§ 8.01-50; 8.01-244.

While Reid's cause of action accrued at the time of Johnson's injury more than one year before this action was filed, the appropriate statute of limitations does not bar Reid's state law claims. The Supreme Court of Virginia has held that a statute of limitations incorporated into a self-contained act applies despite the existence of a generally applicable statute of limitations. *Ogunde v. Commonwealth*, 628 S.E.2d 370, 373 (Va. 2006). In *Ogunde*, the Supreme Court of Virginia found that the Virginia Tort Claims Act's ("VTCA") statute of limitations applied, rather than the statute of limitations for personal actions brought by confined persons, despite the fact that the claim concerned conditions of confinement. *Id.* The *Ogunde* Court relied on the fact that the VTCA is a self-contained act and incorporates its own statute of limitations. *Id.* Virginia's wrongful death statute similarly incorporates its own statute of limitations, stating that section 8.01-244 sets forth the applicable statute of limitations. Va. Code § 8.01-50. Section 8.01-244 is captioned "Actions for wrongful death; limitation," and states that absent particular circumstances not present here, a two year statute of limitations applies to "[e]very action under § 8.01-50." Va. Code § 8.01-244. Just like the VTCA, Virginia's wrongful death statute is self-contained and incorporates its own statute of limitations, which applies even when the wrongful death claim concerns a pretrial detainee's conditions of confinement.

The Intake Defendants' reliance on *Bing*, 722 S.E.2d 244, is misplaced. As an initial matter, the *Bing* Court distinguished *Ogunde*, 628 S.E.2d 370, on the reasoning previously described. The Intake Defendants have provided no authority to conclude that the holding of *Ogunde* has been altered or overruled. Further, the cause of action time barred in *Bing* was a personal action for assault and battery, rather than a wrongful death action. 722 S.E.2d at 244-45. The Supreme Court of Virginia has held that a statute of limitations generally applicable to personal actions "was never intended to apply to a right of action for death by wrongful act." *Horn v. Abernathy*, 343 S.E.2d 318, 324 (Va. 1986) (distinguishing between the "right of action" created by Virginia's wrongful death statute and a "personal action"). The statute of limitations urged by the Intake Defendants applies to "personal actions" brought on behalf of confined persons. Va. Code § 8.01-243.2. This one year statute of limitations applies to "actions seeking damages for personal injuries when the victim is the party-plaintiff or when the victim's death results from a cause unrelated to the tort underlying the cause of action." *Horn*, 343 S.E.2d at 324. It does not, however, apply to wrongful death actions. *Id.*

Accordingly, the Court finds that the two-year statute of limitations codified in Virginia Code § 8.01-244 applies to this action. Because Reid filed her complaint in May of 2013, less than two years after Johnson's death on August 19, 2011, this action is not time barred.

### b.  Wrongful Act Defense

Under Virginia law, the personal representative of a person who commits common law suicide is barred from recovering under Virginia's wrongful death statute. *Wackwitz v. Roy*, 418 S.E.2d 861, 864 (Va. 1992). The Intake Defendants have asserted the illegality of Johnson's suicide as an affirmative defense to this action. Reid argues that Johnson was not of sound mind at the time of his suicide and, therefore, that her wrongful death claim is not barred.

The burden of establishing an affirmative defense falls on the defendant. *Goodman,* 494 F.3d at 464. However, this burden generally cannot be met on a motion to dismiss under Rule 12(b)(6). *Richmond, Fredericksburg & Potomac R.R. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993).

Because it merely tests the legal sufficiency of the complaint, a Rule 12(b)(6) motion is not intended "to address the merits of any affirmative defenses," *id.*, unless "all facts necessary to the affirmative defense clearly appear on the face of the complaint." *Goodman*, 494 F.3d at 464 (emphasis and internal quotation marks and punctuation omitted) (quoting *Forst*, 4 F.3d at 250).

Common law suicide constitutes a common law crime in Virginia and, therefore, a plaintiff cannot recover damages from the consequences of a decedent's voluntary participation in such an illegal act. *See* Va. Code. § 55-4; *Wackwitz*, 418 S.E.2d at 864 (quoting *Miller* v. *Bennett*, 56 S.E.2d 217, 218 (1949)). However, to commit common law suicide, the decedent must have been "of years of discretion and of sound mind" at the time of his death. *Wackwitz*, 418 S.E.2d at 865 (quoting *Plunkett* v. *Supreme Conclave*, 55 S.E. 9, 10 (Va. 1906)); *see also Brown v. Harris*, 240 F.3d 383, 385 (4th Cir. 2001) (granting judgment as a matter of law after trial on the merits). Reid has plausibly alleged with supporting factual matter that Johnson was not of sound mind at the time he took his life. (Am. Compl. ¶¶ 22, 25, 42.) As a result, the Amended Complaint does not contain all facts necessary to conclude that Johnson committed common law suicide as a matter of law. *Accord Wackwitz*, 418 S.E.2d at 862, 865 (holding that it was error to find the decedent's suicide barred a wrongful death claim as a matter of law). To the extent that the Intake Defendants disagree with Reid's allegations, a disputed fact exists, and the Court will not resolve such a dispute in the Intake Defendants' favor on a Rule 12(b)(6) Motion. *See Matkari*, 7 F.3d at 1134.

The Intake Defendants have failed to show on the pleadings that Johnson committed common law suicide. Accordingly, the Court will not dismiss Reid's wrongful death claim on the basis of the Intake Defendants' affirmative defense.

c.   <u>Plausibility of Gross Negligence and Punitive Damages Allegations</u>

The Intake Defendants assert that Reid has failed to plausibly allege a claim for gross negligence under Virginia law. As before, they assert that the Amended Complaint fails to

plausibly allege that they had actual knowledge of Johnson's suicide risk, rendering their conduct negligent, at most, and bringing them within the protection of sovereign immunity. For the reasons already stated, this argument fails.

Additionally, the Intake Defendants cite to a line of cases standing for the proposition that they had no duty to protect Johnson from the conduct of third persons. *See, e.g., Burdette v. Marks*, 421 S.E.2d 419, 420 (Va. 1992). It is axiomatic that a complaint fails unless it alleges the existence of a legal duty, a breach of that duty, and resulting damages. *Fox*, 372 S.E.2d at 375. However, Reid has not alleged that the Intake Defendants breached a duty to any third party; she has alleged that the Intake Defendants were negligent in their care of Johnson, who was under the care and control of the Jail and its employees as a result of Johnson's detention. *Cf. Dudley v. Offender Aid & Restoration, Inc.*, 401 S.E.2d 878, 881 (Va. 1991) (finding a half-way house could be liable for its negligence where it "undertook a responsibility for very close and continuous supervision of its inmates"); *see also Lee v. Downs*, 641 F.2d 1117, 1121 (4th Cir. 1981) ("[P]rison officials have a duty to protect prisoners from self-destruction or self-injury."). The duty allegedly breached was the Intake Defendants' duty to perform their job functions with reasonable care. The Amended Complaint has plausibly alleged that the Intake Defendants breached this duty when they failed to take any suicide prevention measure despite the Jail's statutorily-required suicide prevention plan and actual knowledge of Johnson's propensity for self-harm. Whether this deliberate decision was sufficiently negligent to constitute gross negligence is a question that cannot be resolved on the current record. *See Griffin*, 315 S.E.2d at 212.

With regard to Reid's claim for punitive damages against the Intake Defendants, the Court finds that dismissal would be inappropriate. "Punitive damages may be recovered only where there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others." *Smith v. Litten*, 507 S.E.2d 77, 80 (Va. 1988) (quoting *Hamilton Development Co. v. Broad Rock Club*, 445 S.E.2d 140, 143 (1994) (internal

quotation marks omitted). However, whether "a party acted with a conscious disregard of another's rights need only be a 'possible conclusion' the jury could reach." *Id.* (quoting *Jordan v. Sauve & Koons*, 247 S.E.2d 739, 742 (1978)). Reid has plausibly alleged that the Intake Defendants had actual knowledge of Johnson's suicide risk and deliberately chose not to implement any suicide prevention measures. On the current record, the Court cannot conclude that the Intake Defendants' failure does not constitute "a conscious disregard of [Johnson's] rights" as a matter of law. *Id.*

### 3.  *Additional Arguments Raised by Individual Defendants*

In addition to the foregoing arguments, Defendants Canada, Williams, and Jordan each raise arguments in support of their respective motions to dismiss that apply only to them.

#### a.  Canada

Canada, a Correctional Health Assistant, appears to argue that she is shielded from liability by the fact that she referred Johnson for a psychiatric evaluation and, thereby, took steps to provide for his well-being. To the extent that Canada or other Defendants attempt to rely on this referral as evidence that Johnson's serious medical condition was appropriately addressed, the Court notes that a promise of future medical care cannot constitute a current provision of medical care. Canada's referral for future psychiatric evaluation did nothing to mitigate the risk Johnson posed to himself from the time of his assignment to Pod A until the time of that evaluation.

#### b.  Williams

Williams uniquely argues that she cannot be held liable for deliberate indifference because of Canada's interaction with Johnson. Williams notes that she is entitled to rely on the expertise and judgment of medical personnel. *See Miltier v. Beorn,* 896 F.2d 848, 854 (4th Cir. 1990), *abrogated on other grounds by Farmer*, 511 U.S. 825. Because Canada interacted with

Johnson and made a psychiatric referral, Williams argues that she cannot have known that a substantial risk of serious harm existed.[17] *See Farmer*, 511 U.S. at 837.

While non-medical jail employees may rely on the opinion of the medical staff as to the proper course of an inmate's treatment, non-medical employees can be liable for deliberate indifference if they were personally involved with a denial of treatment or deliberately interfered with the medical staff's treatment. *Miltier,* 896 F.2d at 854.[18] "Failure to respond to an inmate's known medical needs raises an inference that there was deliberate indifference to those needs." *Id.* at 853. While this inference can be rebutted, Williams has not done so.

The Amended Complaint plausibly alleges that Williams was personally involved with Johnson's Intake Procedures, during which a decision was made to withhold any suicide prevention measures despite actual knowledge of Johnson's suicide risk. Although Canada initiated a psychiatric referral, Williams has not demonstrated that Canada, utilizing her medical expertise, determined that the proper course of Johnson's "treatment" would be to withhold all suicide prevention measures; she has not demonstrated that Canada was authorized to make such a determination; and she has not demonstrated that such a determination would be dispositive pursuant to Jail operating procedures. Accordingly, the record does not demonstrate that Williams relied on Canada's medical expertise, immunizing her from liability for deliberate indifference as a matter of law.

Williams additionally argues that she is entitled to qualified immunity because there was no clearly established right requiring her to "do something more" than she did. Essentially,

---

[17] Williams also argues that she cannot be liable for deliberate indifference because she "did not proximately cause Johnson to take his own life." (Williams's Mem. Supp. Mot. Dismiss 13.) This argument fails on its face. It has been well established that the failure to provide suicide prevention measures to a detainee with a known suicide risk constitutes deliberate indifference. *Gordon*, 971 F.2d at 1094; *Buffington v. Baltimore County,* 913 F.2d 113, 119-20 (4th Cir. 1990).

[18] Defendants sued on a theory of supervisory liability under section 1983 may also be held liable if they "tacitly authorized or were indifferent to the prison physicians' misconduct." *Miltier*, 896 F.2d at 854. However, Reid has not alleged any claim for supervisory liability under section 1983.

she asserts that as a Booking Officer, she had no obligation to implement suicide prevention measures, particularly in light of Canada's referral for psychiatric evaluation.[19] In support of her position, Williams cites to a number of factually similar cases in which the defendant jail officers were entitled to qualified immunity. *See, e.g.*, *Short v. Smoot*, 436 F.3d 422 (4th Cir. 2006).[20]

As previously noted, a defendant invoking qualified immunity bears the burden to demonstrate its applicability. *Durham*, 737 F.3d at 299. In doing so, she may provide legal authority demonstrating why the right allegedly violated was not so clearly established "that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Alternatively, she may provide a factual basis for the court to conclude that a reasonable official in her position would have believed her conduct to be lawful. *See Collinson v. Gott,* 895 F.2d 994, 998 (4th Cir. 1990).

As an initial matter, the Court must identify the right allegedly violated with sufficient particularity. *Wilson v. Layne*, 526 U.S. 603, 615, (1999). Reid alleges a general violation of the Fourteenth Amendment, which establishes a right to adequate medical care and, consequently, prohibits deliberate indifference to a serious medical condition. The specific right allegedly violated was Johnson's right to suicide prevention measures in light of his known propensity for self-harm.

Williams has not provided legal authority demonstrating that Johnson's right to suicide prevention measures was not clearly established at the time of his death. It has been long

---

[19] The record does not disclose whether Canada's referral occurred before or after Williams's involvement in the Intake Procedures.

[20] Williams and several other Defendants additionally cite to *Chennault v. Mitchell*, 923 F. Supp. 2d 765 (E.D. Va. 2013), in support of their motions to dismiss. *Chennault* is easily distinguishable on its facts, however. In *Chennault*, the pleadings contained no objective evidence of a serious medical condition, and it was on that basis that the court dismissed the motion. No Defendant seriously disputes that Johnson's propensity for self-harm constituted a serious medical condition.

established in the Fourth Circuit that suicide risk constitutes a serious medical condition and that "prison officials have a duty to protect prisoners from self-destruction or self-injury." *Gordon*, 971 F.2d at 1084 (quoting *Lee*, 641 F.2d at 1121); *see also Buffington*, 913 F.2d 113, 119-20. While the Fourth Circuit has found that *particular* suicide prevention measures are not constitutionally required under particular facts, Williams has cited to no authority calling into question the tenet that *some* preventative measure must be taken to mitigate the risk a suicidal detainee poses to himself. For example, in *Short v. Smoot*, the Fourth Circuit held that the Constitution does not require suicide prevention measures "beyond merely placing [the inmate] in a cell under video surveillance." 436 F.3d at 427. Similarly in *Brown v. Harris*, the Fourth Circuit affirmed judgment as a matter of law in favor of defendant jail officials because—although the officials "took less action than [they] could have,"—they took "deliberate, precautionary steps to reduce the risk that [the detainee] would commit suicide." 240 F.3d at 390-91. In light of these precedents, the Court finds that Johnson's right to some suicide prevention measure was clearly established at the time of his death.

Similarly, Williams has not provided a factual basis to conclude that a reasonable officer in her position would have believed it reasonable to forego all suicide prevention measures in the face of actual knowledge that Johnson had attempted suicide less than twenty-four hours prior. Williams has not supplemented the facts alleged in the Amended Complaint; she relies solely on the fact that Canada referred Johnson for psychiatric evaluation at an unspecified point in the future. As previously noted however, Canada's referral cannot be construed as a suicide prevention measure, and Williams has not provided facts demonstrating when Canada's referral took place during the Intake Procedures or whether Canada was responsible for the decision to forego all suicide prevention measures. Without further factual enhancement, the Court cannot conclude that Williams's conduct was objectively reasonable.

On this record, Williams has not provided legal authority or facts objectively demonstrating that a reasonable official would have believed it lawful to forego all suicide

prevention measures for Johnson. Accordingly, she has not established an entitlement to qualified immunity.

        c.  <u>Jordan</u>

Jordan asserts, correctly, that the Amended Complaint fails to make any allegation specific to him and, as with Newton and the Supervision Defendants, fails to state any claim against him. Reid acknowledges that Jordan should have been categorized as an Intake Defendant because of his employment as a Booking Unit Manager and his participation in the Intake Procedures, and requests leave to amend her pleadings if the Court finds them insufficient.

Unlike the previously discussed requests to amend, Reid has provided information regarding the amendments she proposes to make to her pleadings. At the hearing held on January 21, 2014, Reid's counsel read into the record—without objection from any Defendant—newly obtained information that appears to establish conclusively that Jordan and several other Intake Defendants[21] had actual knowledge of Johnson's suicide risk. This information was obtained from documents created in the course of an internal investigation performed by the Jail after Johnson's suicide. Among other things, the documents appear to detail a conversation between Defendants Jordan and Hicks, in which they debated the necessity of taking suicide prevention measures for Johnson.

In light of these documents, the Court cannot conclude that amendment of Reid's pleadings as to Jordan would be futile, and there is no suggestion from the record or the Parties that Reid's request is made in bad faith or would be prejudicial to Jordan. *See Laber,* 438 F.3d at 426. Accordingly, the Court will defer its disposition of the Jordan Motion and grant Reid limited leave to amend her pleadings, only to the extent necessary to plausibly allege the claims already raised against Jordan.

---

[21] At the hearing, counsel for Reid named Defendants Jordan, Hicks, Lafland, Creel, and Deloatch as being implicated personally involved in Johnson's Intake Procedures.

## IV.   CONCLUSION

For the foregoing reasons, the Newton Motion (ECF No. 1-11) will be GRANTED; the Hicks Motion (ECF No. 11) will be DENIED; the Williams Motion (ECF No. 14) will be DENIED; the Ansong Motion (ECF No. 21) will be GRANTED IN PART, with respect to Defendants Ansong, Grant, Humphrey, Moore, Rawlings, and Whitebread, and DENIED IN PART, with respect to Defendants Canada, Creel, Deloatch, Lafland, and Miller; and the Day Motion will be GRANTED. Accordingly, the Amended Complaint will be DISMISSED without prejudice as to Defendants Newton, Ansong, Grant, Humphrey, Whitebread, Moore, Rawlings, Day, and Jennings.

Because Reid has demonstrated that leave to amend the complaint with respect to Defendant Jordan is appropriate, the Court will DEFER its disposition of the Jordan Motion. Within fifteen (15) days of the date of the accompanying Order, Reid may file a Second Amended Complaint, with only such amendments as are necessary to plausibly allege the claims already raised against Defendant Jordan.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order will issue.

_____/s/_____
James R. Spencer
Senior U. S. District Judge

ENTERED this ___14th_____ day of April 2014.